**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

James Hope,                                          :           Case No. 1:09CV1871

       Plaintiff,                                   :

v.                                                   :

Commissioner of Social Security                      :           **MEMORANDUM OPINION**
Administration,                                                  **AND ORDER**

       Defendant.                                  :

       Plaintiff seeks judicial review, pursuant to 42 U. S. C. § 405(g), of Defendant's final

determination denying his claim for disability insurance benefits (DIB) under Title II of the Social

Security Act (Act), 42 U. S. C. §§ 416 (i) and 423 and for Supplemental Security Income (SSI) under

Title XVI of the Act, 42 U. S. C. §§ 1381 *et seq*.  Pending are the parties' Briefs on the merits (Docket Nos. 12 and 17).  For the reasons that follow, the Commissioner's decision is affirmed.

## I. JURISDICTION

This Court exercises jurisdiction over the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).  *McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 832 -833 (6th Cir. 2006).

## II. PROCEDURAL BACKGROUND

On February 3, 2006, Plaintiff filed applications for DIB and SSI alleging that his disabling condition began on March 19, 2005.  Both applications were denied initially and upon reconsideration (Tr. 54-55, 57-59).  Plaintiff requested a hearing (Tr. 53).  At the administrative hearing, Plaintiff, represented by Attorney Michele McFarland and Dr. Herschel Goren, a Medical Expert (ME), appeared and testified before Administrative Law Judge (ALJ) Alfred J. Lucas (Tr. 455).  On December 29, 2008, the ALJ determined that Plaintiff was not entitled to a period of disability (Tr. 14-27).  The Appeals Council denied Plaintiff's request for review on June 30, 2009, rendering the ALJ's decision the final decision of the Commissioner of Social Security (Tr. 6-8).  Plaintiff filed a timely complaint in this Court.

## III. FACTUAL BACKGROUND

The following testimony was presented during the administrative hearing at which Plaintiff and the ME testified.

### A. PLAINTIFF'S TESTIMONY

Plaintiff was 52 years of age at the time of hearing.  He resided with Julie, a retiree (Tr. 458, 482).  He was 6'3" tall and weighed approximately 205 pounds.  When he was last employed, his weight

bordered on 241 pounds.  He attributed his weight loss to the loss of appetite, a side effect of depression (Tr. 458).  Having attended high school in Scotland, Plaintiff completed the U. S. requirements for a general equivalency degree in 1978 or 1979.  He attended college for two years studying history and sociology (Tr. 460, 461).  Now, Plaintiff was considered permanent and totally disabled by the State of Ohio.  He was awarded benefits accordingly (Tr. 489).

Plaintiff had an extensive employment history.  He was last employed in a civilian capacity for the U. S. Department of the Army as an information maintenance officer for a period of four months.  There he installed computers, network cabling and computer peripherals (Tr. 461).  He was unable to lift more than fifty pounds; consequently, he was unable to comply with the job requirements (Tr. 461-462).

From 1998 to 2004, Plaintiff was a case administrator for the United States Bankruptcy Court (Tr. 462, 463).  Plaintiff was a case administrator and file archivist.  Sitting most of the day, Plaintiff prepared reports, ordered and scanned documents and moved files (Tr. 462).  He could not walk carrying the files which weighed approximately forty pounds; consequently, he could not perform his job (Tr. 463).

Plaintiff was employed as a mail room attendant in 1996 and 1997.  In this position, he processed outgoing mail and distributed incoming mail.  Occasionally, he had to lift heavy items weighing up to sixty pounds.  It was there that he hurt his back (Tr. 464).

Plaintiff also held a position of records technician with the United States Immigration and Naturalization Services in Cleveland.  There he input data from a seated position.  He also retrieved files from the file room.  Files generally weighed more than 25 pounds (Tr. 465).

Plaintiff was a post office clerk in Cleveland.  His entry level position included that of a bar code operator, a job performed in an upright position.  The mail tended to weigh only five or ten pounds (Tr. 466).

3

In 1994 Plaintiff worked as security personnel at an art museum.  Initially, his job entailed patrolling the galleries.  Later, he moved to the security nerve center where he watched monitors.  This job lasted approximately two years (Tr. 467).

Plaintiff suffered from back pain, leg pain, migraines and recurrent depression (Tr. 471, 475). Plaintiff had undergone epidural injections but with no change in the levels of pain.  Plaintiff tried physical therapy but the physical exertion exacerbated the pain (Tr. 471).  In November 2006, Plaintiff had back surgery.  He continued to receive ongoing care of his back, discs and legs with Dr. Snell quarterly (Tr. 468).  The severity of pain remained constant (Tr. 473).  The pain was aggravated when he stood too long, sat too long or climbed stairs (Tr. 477, 478).  To treat the pain, Plaintiff was prescribed Vicodin (Tr. 469).  In addition, Plaintiff had a TENS (Transcutaneous Electrical Nerve Stimulation) unit, a battery-operated device that sends electrical impulses to numb the pain.  Plaintiff was not certain that the electrical impulses relieved his pain (Tr. 478).

Plaintiff experienced migraines "maybe twice a week."  If he sensed the onset, he would inject Imitrex®, a pain reliever (Tr. 475).  The injections caused hypertension (Tr. 470).  If he did not sense the onset of a migraine in time, the headache lasted the entire day (Tr. 475-476).  The symptoms of the migraine included severe pain, nausea, a lack of visual acuity and dysgeusia, distortion of his sense of taste.  In addition to taking medication, Plaintiff would lie in a darkened room (Tr. 476).

Plaintiff treats with a psychologist, Dr. Michael Pavlak, twice monthly, and he treats with a psychiatrist once a month (Tr. 468, 469).  Plaintiff was prescribed Wellbutrin®, an antidepressant, and Depakote, a medication designed to assist in treating bipolar disorders.  The side effects of the medication include drowsiness, lethargy and hypertension (Tr. 469, 470).

Plaintiff has walked with a cane since 1997. He opined that he could sit, at one time, up to twenty

4

minutes and that he could walk maybe half a block (Tr. 477).  He could not squat down by bending his knees but he could touch his knees if he pushed up.  Plaintiff estimated that he could lift up to ten pounds (Tr. 479).

Plaintiff became nervous when exposed to strangers or people in general (Tr. 480).  Episodes of anxiety have an effect on Plaintiff physically in the form of dry heaves or vomiting (Tr. 481-482).  His attention span was short, he had difficulty concentrating and he had a faulty memory (Tr. 485-486).

Occasionally Plaintiff helped Julie cook.  He washed his own clothes when necessary.  Plaintiff assisted with the yard work until his back or leg "started acting up" (Tr. 487).  Plaintiff performed no household repairs (Tr. 488).  He just read and watched television (Tr. 489).

**B.    ME TESTIMONY.**

Dr. Herschel Goren, a retired physician formerly associated with the Cleveland Clinic, summarized Plaintiff's history of impairments and compared them to the listings.  He found that Plaintiff's impairments did not meet or equal the listings, either individually or in combination (Tr. 496-499).  From his reading of the record, Plaintiff could lift or carry twenty pounds occasionally or ten pounds frequently.  There would be no restrictions on standing, walking, sitting or hand or foot controls.  Dr. Goren opined that Plaintiff should never climb a ladder, rope or scaffold, occasionally use a ramp or stairs, stoop, kneel, crouch or crawl (Tr. 499).  There should be no high production quotas such as required in assembly line work.  There should only be superficial interpersonal interaction with co-workers, supervisors and the general public (Tr. 500, 501).

Upon cross-examination, Dr. Goren admitted that there were no restrictions on the complexity of tasks that Plaintiff could complete (Tr. 503).  Based on the abnormal results from the electromyogram, Plaintiff had pain.  Dr. Goren did not discount Plaintiff's subjective complaints of pain as they could be

consistent with a claimant in Plaintiff's position with Plaintiff's medical record (Tr. 505).

## IV. MEDICAL EVIDENCE

When picking up mail, Plaintiff sustained a lumbosacral sprain and herniated L5-S1 disc on January 6, 1997 (Tr. 211, 284).

On or about May 18, 1999, Plaintiff was admitted to the hospital after a suicide attempt (Tr. 123). The treating physician, Dr. Farid Sabet, a psychiatrist, diagnosed Plaintiff with recurrent depression, alcohol dependence, polysubstance abuse, mixed personality disorder, extreme migraine headaches and some impairment in reality testing or communication or major impairment in several areas such as work or school, family relations, judgment, thinking, or mood as well as behavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment or inability to function in almost all areas (Tr. 125).

On April 14, 2000, Dr. John Schnell, a physical medicine specialist, ordered a series of lumbar epidural steroid blocks on April 27, May 5 and May 11, 2000 (Tr. 129-135).

On September 5, 2001, Dr. Jerold P. Gurley, an orthopedic surgeon, advised Plaintiff that the magnetic resonance imaging (MRI) scan of his lumbar spine revealed disc displacement at the L4-5 and L5-S1 levels.  There was central narrowing due to the herniation at the L4-5 level (Tr. 137).

Plaintiff was admitted to the Southwest General Health Center on January 23, 2003 and he was discharged on January 29, 2003.  While there, Dr. Terence L. Witham, a psychiatrist, diagnosed Plaintiff with a bipolar disorder on January 23, 2003 (Tr. 138).  Nursing personnel in Southwest's behavioral health system developed a plan for treatment of suicidal ideations and feelings of hopelessness (Tr. 162-169).

Plaintiff was admitted to the Cleveland Clinic on October 13, 2005 to resolve suicidal ideations

and auditory hallucinations (Tr. 171).  Plaintiff had no physical complaints (Tr. 174).  His complete blood count and general chemistry were generally within normal limits (Tr. 177).

Plaintiff was admitted to Lakewood Hospital on October 13, 2005, after an apparent attempt to commit suicide (Tr. 222-223).  He was stabilized and released on the following day with instructions to continue on his current medications (Tr. 227).

Dr. Dennis F. Hoeffler, through North Coast Health Ministry, addressed issues related to chronic persistent depression from October 19, 2005 through January 3, 2006 (Tr. 181).

The computed tomographic (CT) scan of the brain taken on January 3, 2006, showed a normal brain for a person of Plaintiff's age (Tr. 188).

Dr. Josephine Sabharwal, a psychiatrist/neurologist, conducted a psychiatric evaluation on January 5, 2006 (Tr. 341-343).  Dr. Sabharwal monitored Plaintiff's intake of psychotropic drugs during the course of the next year.   In addition, a licensed social worker facilitated mental health intervention/client response sessions.  The counseling plan was closed on March 27, 2007 (Tr. 309-340).

On March 13, 2006, Dr. Schnell opined that Plaintiff could lift/carry one half pound occasionally and frequently, stand/walk three hours in an eight-hour work day with one quarter to one half of the three hours being completed without interruption and sit three hours in an eight-hour work day with one quarter to one half of the three hours being completed without interruption (Tr. 291).  Dr. Schnell further opined that Plaintiff should refrain from or rarely climb, stoop, crouch, kneel, crawl, push/pull or engage in gross manipulation (Tr. 292).

Dr. Guy Melvin, a psychologist, completed the Psychiatric Review Technique Form on April 7, 2006, in which he explained that Plaintiff had a medically determinable impairment, namely, a major depressive disorder (Tr. 195).  Plaintiff had mild limitations in his ability to conduct activities of daily

living and moderate limitations in his ability to maintain social functioning, concentration, persistence or pace (Tr. 196).  After assessing Plaintiff's overall mental functional capacity showed moderate limitations in his understanding and memory, carrying out detailed instructions, maintaining attention and concentration for extended periods of time, completing a normal work week and responding appropriately to changes in the work setting, Dr. Melvin concluded that Plaintiff would function best with simple one and two step tasks in a relatively static environment (Tr. 199-200A).

Dr. Gerald Klyop, a psychiatrist, opined on May 6, 2006, that Plaintiff could occasionally lift and/or carry twenty pounds or stoop, frequently lift and/or carry ten pounds, stand and/or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday and engage in unlimited pushing and/or pulling (Tr. 203, 204).  Plaintiff had no manipulative, visual, communicative or environmental limitations (Tr. 206).

On August 21, 2006, Dr. Ken Gerstenhaber, a psychologist, conducted an evaluation to assess the presence of a psychological condition and its relationship to an industrial injury (Tr. 210).  He recommended that treatment continue with psychotropic medication and counseling (Tr. 212).

Dr. David J. Horejs determined on September 6, 2006, that Plaintiff had disc degeneration with mild to moderate diffuse bulging at L3-4 of the lumbar spine, moderate diffuse disc bulging or protrusion at L4-5 of the lumbar spine and diffuse bulging with mild eccentric broad based left paramedian disc protrusion (Tr. 278).

On November 27, 2006, Plaintiff underwent an operation to remove a portion of the vertebral bone and part of the cushion that protect the spinal column (Tr. 258).  Six weeks after surgery, Plaintiff was "doing better" but he had not reached full recovery (Tr. 246).  Five and one half months later, Plaintiff continued to have pain that radiated down his left leg to his left toe (Tr. 236).

8

On December 15, 2006, Dr. Jerry E. Flexman, Ph.D., a clinical neuropsychologist, administered the Structured Inventory of Malingered Symptoms, a 75-item, true/false screening tool to assess malingered psychopathology and neuropsychological symptoms (Tr. 232, Http://www.mhs.com.) Plaintiff's score was elevated beyond the threshold.  Plaintiff's score also showed evidence of a tendency to overreact to psychological issues with some embellishment.  The Minnesota Multiphasic Personality Inventory, a test used to assist trained professionals identify personality structure and psychopathology, results, showed a profile that was considered questionable in terms of its validity (Tr. 232; Http://en.wikipedia.org/wiki/Minnnesota_Multiphasis_Personality_Inventory.).

On January 12, 2007, Dr. Matthew J. Likavec, a neurosurgeon, addressed Plaintiff's complaints of left low back and left leg pain following the removal of a vertebral lamina and decompression back surgery (Tr. 253).  Dr. Likavec was the "provider" of two physical therapy sessions.  The physical therapist recommended therapeutic exercise on February 21, 2007 (Tr. 434-437).  During the second session on February 23, 2007, Plaintiff underwent therapeutic exercise.  He tolerated this procedure well (Tr. 438-439).  Six weeks after surgery, Plaintiff had little back pain but he still had leg pain (Tr. 246).

Dr. Aaron Billowitz, a psychiatrist, diagnosed Plaintiff with a bipolar disorder evidenced by frequent episodes of severe depression and past episodes of manic symptoms (Tr. 355, 356).  Dr. Billowitz monitored Plaintiff's intake of psychotropic drugs from March 8 through November 15, 2007 (Tr. 344-353A).

Dr. Pavlak conducted counseling sessions beginning on March 12, 2007, through July 18, 2008 (Tr. 359-400; 418-433).  The sessions included discussions of Plaintiff's episodes of depression and the causes.  Several counseling sessions were devoted to assessing Plaintiff's life goals, activities and motivation.  During the session on July 18, 2008, Plaintiff advised Dr. Pavlak that he was awarded

permanent total disability benefits effective June 25, 2008, retroactive to March 2008 (Tr. 418).

Dr. Schnell concluded from the nerve conduction studies completed on April 12, 1007, that Plaintiff had mild to moderate left L5 radiculopathy and mild injury to the left S1 nerve root (Tr. 272). He also concluded from an MRI of the lumbar spine completed on April 26, 2007, that there was a disc bulge at L3-4 and L4-5.  There was evidence "for" prior left sided laminectomy (Tr. 266).

On May 15, 2008, Dr. Steven B. Van Auken, Ph.D., conducted a clinical interview after which he administered the Symptoms Checklist 90-R, a self report psychometric instrument designed to evaluate a broad range of psychological problems and symptoms of psychopathology, and Beck Depression Inventory II, a 21-question multiple-choice self-report inventory designed to measure the severity of depression.  Www.beck_depression_inventory; www.symptom_checklist_90.  Plaintiff's somatization score, a score applied to patients who persistently complain of varied physical symptoms that have no identifiable physical origin, indicated some symptom magnification; however, the scores that measured Plaintiff's depression, anxiety and phobic anxiety were elevated (Tr. 407).  The score achieved on the Beck Depressions Inventory indicated severe depression (Tr. 405).  Dr. Van Auken concluded that Plaintiff had reached a plateau in his healing process with regard to his aggravation of pre-existing major depression, recurrent (Tr. 403).  Nevertheless, Plaintiff had a moderate level of impairment in performing activities of daily living, social functioning, concentration, persistence and pace.  Plaintiff possessed a low level of adaptive flexibility (Tr. 404A).  Dr. Van Auken opined that Plaintiff was incapable of work (Tr. 404B).

Plaintiff suffered from persistent constipation.  A colonoscopy administered on July 14, 2008, revealed the presence of small bowel mucosa with no significant abnormality.  There was a fragment of a benign polyp on the colon (Tr. 443).

10

Plaintiff resumed treatment at the North Coast Health Ministry where he was treated for migraine headaches, chronic constipation, stomach pain and bilateral flank pain on April 21 and 28, 2008, (Tr. 445).  On August 22, 2008, an injection was administered to treat the migraine headaches (Tr. 446).

On August 8, 2008, Dr. Schnell opined that Plaintiff's ability to lift/carry was restricted to five to ten pounds occasionally; his ability to stand/walk was restricted to fifteen minutes without interruption and his ability to sit was limited to fifteen minutes in an eight-hour workday but he could sit for one to two hours without interruption (Tr. 447).  Plaintiff should never stoop, crouch, kneel, crawl, push/pull or engage in gross manipulation.  If employed, Plaintiff required a sit/stand option.  Dr. Schnell characterized Plaintiff's pain as severe (Tr. 448).

On June 6, 2009, an MRI, without and with contrast, was administered to Plaintiff's spine (Tr. 453).  The results showed, *inter alia,* minimal slight left curvature of the spine, disc space narrowing, degeneration of L1-2, L4-5 and L5-S1 disc and bilateral renal cysts (Tr. 454).

## V. STANDARD FOR ESTABLISHING DISABILITY

To be entitled to disability insurance benefits, an individual must be under a disability within the meaning of the Social Security Act. *Rabbers v. Commissioner Social Security Administration*, 582 F.3d 647, 651 -652 (6th Cir. 2009) (*citing* 42 U.S.C. § 423(a)(1)(E)).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* (*citing* 42 U. S. C. § 423(d)(1)(A)).  The SSA has established a five-step sequential evaluation process for determining whether an individual is disabled.  *Id.* (*citing* 20 C.F.R. § 404.1520(a)).  If the claimant is found to be conclusively disabled or not disabled at any step, the inquiry ends at that step.  *Id.*

11

The five steps are as follows:

(1)     If the claimant is doing substantial gainful activity, the claimant is not disabled.

(2)     If the claimant does not have a severe medically determinable physical or mental impairment-i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities-the claimant is not disabled.

(3)     If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

(4)     If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

(5)     If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Id.* (*citing* 20 C. F. R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g); *see also Cruse v. Commissioner of Social Security,* 502 F.3d 532, 539 (6th Cir.2007); *Walters v. Commissioner of Soc. Sec.,* 127 F.3d 525, 529 (6th Cir. 1997)).  The claimant bears the burden of proof through step four; at step five, the burden shifts to the Commissioner.  *Id*.(*citing Jones v. Commissioner of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003)).

## VI. THE ALJ'S FINDINGS

After careful consideration of the entire record, the ALJ made the following findings:

1.     Plaintiff met the insured status requirements of the Act through December 31, 2009.

2.     Plaintiff had not engaged in substantial gainful activity since March 19, 2005, the alleged onset date.  20 C.F.R. 404.1571 *et seq.,* and 416.971 *et seq.*

3.     Plaintiff had the following severe impairments: lumbar degenerative disc disease with

12

radiculopathy/status post hemilaminectomy and microdiskectomy, major depressive disorder, panic disorder and personality disorder.

4. Plaintiff did not have an impairment or combination of impairments that met or medically equals one of the listed impairments in 20 C.F.R. part 404, Subpart P, Appendix 1. 20 C.F.R. 4041525, 404.1526, 416.925 and 416.926.

5. After careful consideration of the entire record, the ALJ found that the Plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with restrictions. Specifically, Plaintiff could lift and carry up to twenty pounds occasionally and ten pounds frequently. He could sit for six hours of an eight-hour workday and stand and/or walk for six hours of an eight-hour day. Plaintiff could not climb ladders, ropes or scaffolds or work at unprotected heights. He could climb ramps and stairs occasionally. He could occasionally stoop, kneel, crouch and crawl. He could not perform work involving high production quotas. He cannot perform work involving intense, interpersonal interactions, e.g. arbitration, negotiation, supervision or confrontation.

6. Plaintiff was capable of performing past relevant work as a postal clerk, museum security guard and security camera monitor. This work does not require the performance of work-related activities precluded by Plaintiff's RFC.

7. Plaintiff was not under a disability as defined under the Act.

(Tr. 19-27).

## VII. STANDARD OF REVIEW

In social security cases, the Commissioner determines whether a claimant is disabled within the meaning of the Act and, thereby, entitled to benefits. *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009) (*citing* 42 U. S. C. § 405(h)). The court's review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence. *Id.* at 405-406 (*citing Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997)). The substantial-evidence standard is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Id.* (*citing Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir. 2004)). "The substantial-evidence standard . . . presupposes that there is a

13

zone of choice within which the decisionmakers can go either way, without interference by the courts." *Id.* (*citing Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)).  Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Id.* (*citing Callahan,* 109 F.3d at 273).  The court's role is not to resolve conflicting evidence in the record or to examine the credibility of the claimant's testimony.  Foster v. Halter, 279 F. 3d 348, 353 (6th Cir. 2001) (*citing Gaffney v. Bowen,* 825 F.2d 98, 100 (6th Cir.1987) (per curiam)).

In determining the existence of substantial evidence, the reviewing court must examine the administrative record as a whole. *Id.* (*citing Kirk*, 667 F.2d at 536).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *See Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir.1983), and even if substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).

## VIII. DISCUSSION

Plaintiff contends that:

(1)     The ALJ failed to give the opinions of Drs. Snell, Likavec and Pavlak complete deference or set forth reasons for rejecting the opinions.

(2)     The ALJ erred in relying on the opinions of Dr. Goren.

(3)     The ALJ's assessment of Plaintiff's capacity to perform light work is not based on substantial evidence.

(4)     Plaintiff is disabled due to pain.

## 1.     THE TREATING PHYSICIAN RULE.

Plaintiff argues that the ALJ erred by failing to give complete deference to Drs. Snell, Likavec

and Pavlak.  Plaintiff contends that Dr. Snell's opinions, based on diagnostic and clinical findings, are internally consistent and they are contradicted, in part, only by the ME.  He argues further that Dr. Likavec provided substantial evidence as the basis for Plaintiff's pain and that the record is replete with findings of Dr. Pavlak that Plaintiff's mental impairments were severe.  Yet, the ALJ attributed less weight to these opinions and all of these opinions were entitled to controlling weight.

Generally, the opinions of treating physicians are given substantial, if not controlling, deference. *Warner v. Commissioner of Social Security*, 375 F.3d 387, 390 (6th Cir. 2004) (*citing King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); 20 C.F.R. § 404.1527(d)(2) (2004)).  Treating physicians' opinions are only given such deference when supported by objective medical evidence.  *Id.* (*citing Jones v. Commissioner of Social Security*, 336 F.3d 469, 477 (6th Cir. 2003)).  Opinions of treating physicians are given great weight even if those opinions are deemed not to be controlling.  *White v. Commissioner of Social Security,* 572 F.3d 272, 286 (6th Cir. 2009) (*citing* S.S.R. 96-2p).  ALJs must articulate "good reasons" for not giving the opinions of a treating physician controlling weight.  *Id.* (*citing* 20 C.F.R. § 404.1527(d)(2)).  But "the ultimate decision of disability rests with the administrative law judge."  *Id.* (*citing Walker v. Secretary of Health and Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992)).

Controlling weight applies when all of the following are present:

1.    The opinion must come from a "treating source," as defined in 20 C.F.R. § 404.1502.

2.    The opinion must be a "medical opinion."  Under 20 C.F.R. § 404.1527(a), "medical opinions" are opinions about the nature and severity of an individual's impairment(s) and are the only opinions that may be entitled to controlling weight. (See SSR 96-5p, "Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner.").

3.    The adjudicator must find that the treating source's medical opinion is "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques. The adjudicator cannot decide a case in reliance on a medical opinion without some reasonable support for the opinion.

15

4.      Even if well-supported by medically acceptable clinical and laboratory diagnostic techniques, the treating source's medical opinion also must be "not inconsistent" with the other "substantial evidence" in the individual's case record.

TITLES II AND XVI:  GIVING CONTROLLING WEIGHT TO TREATING SOURCE MEDICAL OPINIONS, SSR 96-2p, 1996 WL 374188, *2 (1996).

a.      **DR. SNELL**

The ALJ did give Dr. Snell's opinions considerable weight specifically his assessment of Plaintiff's work capacity as of March 13, 2006.  Because Dr. Schnell's opinions regarding Plaintiff's abilities improved from July 2006 to October 2007, and from March to August 2008, the ALJ concluded that Dr. Snell's opinions were internally inconsistent as well as inconsistent with the ME's opinions.  It is true that Dr. Snell opined in March 2006 that Plaintiff could lift no more than ten pounds.  Later in July 2006, he opined that Plaintiff could lift no more than twenty pounds.  Dr. Snell's treatment notes dated March 4, 2008, reflected that Plaintiff could sit for fifteen minutes, stand or walk for fifteen minutes (Tr. 416).  On August 3, 2008, Dr. Snell opined that Plaintiff could sit for fifteen minutes in an eight-hour workday and that he could sit for up to two hours without interruption (Tr. 447).  While this evidence could lead a different factfinder to an alternate conclusion, the Magistrate cannot resolve conflicts in evidence or make credibility of evidence determinations.  There is evidence to support the ALJ's decision to discount Dr. Snell's opinions.  The Magistrate does not disturb the ALJ's decision to give considerable but not controlling weight to Dr. Snell's opinions.

b.      **DR. LIKAVEC**.

Plaintiff argues that Dr. Likavec provided substantial objective medical evidence to support a basis for his pain and that these findings are entitled to controlling weight.

The Magistrate finds that the ALJ considered Dr. Likavec's performance as an attending surgeon in the performance of a left hemilaminotomy and microdiskectomy on November 27, 2006.  The ALJ

16

gave controlling weight to Dr. Likavec's opinions as he found that Plaintiff underwent surgery after enduring a long history of back pain.

      **c.**    **DR. PAVLAK**.

The record is replete with treatment notes supporting Dr. Pavlak's opinion that Plaintiff suffered from social isolation, loss of energy/appetite, sleep deprivation, anxiety, suicidal ideation, decreased concentration and irritability. Plaintiff contends that the ALJ erred in failing to discuss the treatment notes.

The ALJ must evaluate every medical opinion of record. *See* 20 C. F. R. §§ 404.1527(d), 416.927(d) (Thomson Reuters 2010). However, the regulations do not require that the ALJ discuss the merits of all probative evidence. 20 C. F. R. §§ 404.1527(d), 416.927(d) (Thomson Reuters 2010). The ALJ did give controlling weight to Dr. Pavlak's conclusion that Plaintiff suffered from a severe major depressive disorder (Tr. 19). The ALJ did not provide a discussion of the prodigious treatment notes provided by Dr. Pavlak. Discussion of Dr. Pavlak's treatment notes would have been superfluous since the treatment notes merely recite Plaintiff's subjective complaints on the date of his visit, Dr. Pavlak's elucidation of Plaintiff's subjective complaint, Dr. Pavlak's assessment and the plan to see him during the following week. Failure to discuss the treatment notes under these circumstances is harmless error.

2.    **THE MEDICAL EXPERT RULE**.

Plaintiff contends that reliance on the ME's opinions is wholly inappropriate without basis and that such opinions are not based on an examination but solely on review of the medical file. Plaintiff argues that the ALJ, nevertheless, rejected the treating physician opinions and gave deference to the ME's opinions.

The ALJ **must** evaluate the opinions of medical experts who testify during the administrative

hearings.  20 C. F. R. §§ 404.1527, 416.927 (Thomson Reuters 2010).  These opinions must be evaluated under the same factors attributable to the treating medical sources including, at a minimum, supportability, consistency, specialization and any other relevant factors.  20 C. F. R. §§ 404.1527(d), (f), 416.927(d), (f) (Thomson Reuters 2010).

Consistent with the provisions of the Act, the ALJ analyzed Dr. Goren's opinions, noting where his opinions were in contrast with the opinions of treating and examining physicians.  The ALJ considered Dr. Goren's experience as a board-certified neurologist, his review of the entire record and his exposure to Plaintiff's testimony.  The ALJ alluded to the similarities between Dr. Snell's opinions regarding the August 2008 work capacity ratings and referenced the supportability of the evidence and the consistencies with other opinions in the record as a whole.  The ALJ considered all other factors that could have a bearing on the weight to which Dr. Goren's opinion is entitled.  He articulated those reasons.  Having weighed Dr. Goren's opinions under the requirements of the Regulations and giving good reasons for attributing superior weight to Dr. Goren's opinions, the ALJ did not supplant the treating physicians' opinions.  He merely attributed appropriate weight to the opinions of Dr. Goren in light of the evidence adduced by the treating physicians.  Compliance with the procedural requirements was not only appropriate but there was a basis for compliance.

3.      RESIDUAL FUNCTIONAL CAPACITY.

Plaintiff argues that his capacity for light work is eroded by significant exertional restrictions that interfere with sustained activity, radicular symptoms that preclude sitting and standing for prolonged periods and mental limitations.  Plaintiff contends that he ALJ's finding that he can perform light work is not supported by substantial evidence and that remand is necessary to obtain the testimony of a VE to provide a proper analysis.

18

Under the analytical scheme established by the regulations, RFC is meant to describe the claimant's residual abilities or what a claimant can do. *Howard v. Commissioner of Social Security,* 276 F.3d 235, 240 (6th Cir.2002).  Residual functional capacity, an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting eight hours a day, for five days a week, or an equivalent work schedule, is best gauged by objective medical evidence and the work related limitations dictated thereby.  *Cross v. Commissioner of Social Security*, 373 F. Supp.2d 724 732 (N. D. Ohio 2005) (*citing Swain v. Commissioner of Social Security*, 297 F. Supp.2d 986, 988-989 (N. D. Ohio 2003)).  Under the Regulations, the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an "assessment of [her] residual functional capacity."  *Webb v. Commissioner of Social Security,* 368 F.3d 629, 633 (6th Cir. 2004) (*citing* 20 C.F.R. § 416.920(a)(4)(iv)).

Here, the ALJ was charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form a residual capacity.  Upon review of his decision, the ALJ complied with this procedure.  He compiled Plaintiff's testimony and the medical evidence that dictated physical restrictions identified by Drs. Schnell and Goren.  He also considered the exertional restrictions that interfered with sustained activity as well as the radicular symptoms that precluded sitting and standing. He also compared Plaintiff's allegations of impaired mental cognition with the opinions of Drs. Billowitz, Van Auken and Flexman.  Even if a fact finder were to reach a different conclusion, the RFC finding by the ALJ accurately described Plaintiff's abilities based on his testimony and the objective medical evidence.  The resulting RFC assessment complies with the legal framework for evaluating RFC. Such finding cannot be disturbed.

## IX.  CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**


<u>/s/Vernelis K. Armstrong</u>
United States Magistrate Judge


Date:   September 21, 2010

20